IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH D. WIVELL and, <br> TINA M. WIVELL, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO BANK, N.A. <br> d/b/a WELLS FARGO HOME <br> MORTGAGE, et al., <br><br> Defendants. | Case No. 12-3457-CV-S-DGK |

## ORDER GRANTING MOTION TO DISMISS

This case arises out of the foreclosure of Plaintiffs Kenneth and Tina Wivell's home. Plaintiffs allege that Defendant Wells Fargo Bank, N.A. ("Wells Fargo") advised them to stop making loan payments on their home in order to be eligible for a loan modification but assured them that it would not foreclose on them as a result. Plaintiffs contend they stopped making payments, applied for a modification, and diligently followed Wells Fargo's other instructions. Subsequently, Wells Fargo informed Plaintiffs that they were not eligible for a loan modification. A few days later, Defendant Kozeny & McCubbin, L.C. ("Kozeny"), the trustee on the deed of trust, foreclosed. Plaintiffs are now suing Wells Fargo and Kozeny for unlawful foreclosure and other claims. Now before the Court is Defendant Wells Fargo's Motion to Dismiss Complaint (Doc. 16).[1]

---

[1] In ruling on the pending motion, the Court has also considered Wells Fargo's suggestions in support (Doc. 17), Plaintiffs' suggestions in opposition (Doc. 44), and Wells Fargo's reply (Doc. 45).

1

**Background**

The allegations set forth in the Petition are as follows. Plaintiffs were current on their loan payments until January 1, 2009, at which time Plaintiffs contacted Wells Fargo to conduct a loan modification on the property at issue in this litigation (Doc. 1, Exh. 2, at ¶14). Wells Fargo notified Plaintiffs about the possibility of a moratorium but stated that Plaintiffs must be in default before pursuing this option.

Plaintiffs called Wells Fargo again in March 2009 to discuss a moratorium, and Wells Fargo advised them that their payment must be ninety days past due before they could obtain this remedy. Wells Fargo advised Plaintiffs to stop making payments, and Plaintiffs complied. *Id*. at ¶¶ 14-17.

In April 2009, Plaintiffs called Wells Fargo concerning the moratorium. Wells Fargo informed Plaintiffs they did not have a moratorium program and that Plaintiffs would need to pursue a loan modification. Plaintiffs faxed Wells Fargo the paperwork necessary for a loan modification. *Id*. at ¶ 18.

In May 2009, Plaintiffs called Wells Fargo about the status of their loan modification and were advised that it could take up to ninety days to receive an answer. *Id*. at ¶ 19.

In June 2009, Wells Fargo advised Plaintiffs that their loan modification was denied because too much time had elapsed since its filing. Wells Fargo then advised Plaintiffs to restart the loan modification process. *Id*. at ¶ 20. Plaintiffs sent the necessary paperwork to Wells Fargo multiple times, but Wells Fargo denied receiving it. *Id*. at ¶ 20. Plaintiffs attempted to start making payments on their loan, but Wells Fargo told Plaintiffs that it would not accept any payment less than the full amount due. *Id*. at ¶ 21.

In July 2009, Plaintiffs called Wells Fargo concerning their loan modification. Wells Fargo again advised that it could take up to ninety days to receive an answer on a loan modification and further advised that it would be foreclosing on Plaintiffs' home. *Id*. at ¶ 22.

In August 2009, Plaintiffs called Wells Fargo to inquire about the status of their loan modification. Wells Fargo informed Plaintiffs that it believed the parties had an agreement for Plaintiffs to pay $1,500 per month until the past-due amount was paid in full. Plaintiffs disputed this agreement. Wells Fargo again notified Plaintiffs that it was putting their home into foreclosure status. *Id*. at ¶ 23.

In October 2009, Plaintiffs called Wells Fargo about the status of their loan modification and were told that it was in review. At this time, Plaintiffs attempted to make a payment, but Wells Fargo rejected it, again stating that it would not accept anything but the full balance due.

In November 2009, Wells Fargo informed Plaintiffs that their loan modification was still under review. *Id*. at ¶ 24-25.

In December 2009, Plaintiffs called concerning their loan modification and were advised that their home was up for foreclosure in January 2010. *Id*. at ¶ 26. At that time, Plaintiffs submitted another request for a loan modification. *Id*.

From approximately January 18, 2010 until January 29, 2010, Plaintiffs repeatedly called Wells Fargo to check on the status of their loan modification request. Wells Fargo advised Plaintiffs to make three good faith payments and then to call and get the rest of the payment arrangements. *Id*. at ¶ 27. Plaintiffs made these three payments in February 2010, March 2010, and April 2010. *Id*. at ¶ 28.

In April 2010, Wells Fargo informed Plaintiffs that they must make a $14,000 balloon payment. Plaintiffs told Wells Fargo they could not make this payment and applied for another

loan modification. *Id*. at ¶ 29. From approximately April 15, 2010 until April 25, 2010, Plaintiffs continued to call Wells Fargo to check on the status of their loan modification. Plaintiffs were again told that it could take up to ninety days to reach a decision. *Id*. at ¶ 30.

On June 4, 2010, Wells Fargo informed Plaintiffs that their loan modification was denied and that it was sending a financial packet for them to fill out. *Id*. at ¶ 31. On approximately June 12, 2010, Plaintiffs learned that a foreclosure sale was set for June 30, 2010 at 9:00 a.m. *Id*. at ¶ 32. Plaintiffs sent the financial packet to Wells Fargo on approximately June 17, 2010 and called to verify receipt of the packet on June 18, 2010. *Id*. at ¶¶ 34-35. Plaintiffs called again on June 23, 2010 to check on the status of their loan modification request, and Wells Fargo informed them that it was in its final stages of review and a negotiator would call them to give them their options for a payment plan. Wells Fargo also stated that the payment plan would stop the foreclosure. *Id*. at ¶ 36. On June 30, 2010, Plaintiffs contacted Wells Fargo about the status of their loan modification. Wells Fargo advised them that their property had been sold that morning. *Id*. at ¶ 37.

Plaintiffs further allege that on the various dates described above, Wells Fargo represented that it would waive Plaintiffs' past defaults under the note and deed of trust and that it would not foreclose on the deed of trust. In reliance on these representations, Plaintiffs made additional improvements to the real estate and made partial payments on the note. *Id*. at ¶ 38.

**Standard of Review**

A court must dismiss a complaint if it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing the adequacy of a complaint, the court assumes that the factual allegations in the complaint are true and construes them in the light most favorable to the plaintiff. *Data Mfg. Inc. v. UPS, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). To survive a 12(b)(6)

motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545 (internal citations omitted)). A complaint that alleges only "naked assertion[s] devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## Discussion

Plaintiffs assert the following claims against Wells Fargo: (1) wrongful foreclosure; (2) fraudulent misrepresentation; (3) violations of the Missouri Merchandising Practices Act ("MMPA"); (4) civil conspiracy; (5) negligence; and (6) negligent misrepresentation. In Plaintiffs' opposition to Wells Fargo's motion to dismiss, they indicate that they want to voluntarily dismiss the civil conspiracy claim against Wells Fargo.

**I.    Plaintiffs have failed to state a claim for wrongful foreclosure against Wells Fargo.**

Count I of the Petition asserts a wrongful foreclosure claim against Wells Fargo and seeks both damages and equitable relief (Doc. 1, Exh. 2, at ¶¶ 59-60). Although labeled as one count, read in the light most favorable to Plaintiffs, Count I asserts two separate causes of action: a tort for wrongful foreclosure and a separate, equitable action for wrongful foreclosure. Missouri law recognizes these related claims as distinct causes of action. *See Dobson v. Mortg.*

*Elec. Registration Sys, Inc./GMAC Mortg. Corp,* 259 S.W.3d 19, 22 (Mo. Ct. App. 2008) (discussing differences between the two actions). A plaintiff asserting a wrongful foreclosure claim for damages must "plead and prove that when the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose." *Spence v. JPMorgan Chase Bank, N.A.,* No. 11–3185–CV–S–RED, 2011 WL 4733445, at *1 (W.D. Mo. Oct. 5, 2011) (quoting *Fields v. Milsap and Singer, P.C.*, 295 S.W.3d 567, 571 (Mo. Ct. App. 2009)). A plaintiff asserting an equitable claim for wrongful foreclosure does not have to prove that he was not in default, only that the sale was void or voidable.[2] *Dobson*, 259 S.W.3d at 22.

As noted in the Court's order on the motion to remand, Plaintiffs cannot maintain a tort claim for wrongful foreclosure because Plaintiffs concede that around March 2009 they stopped making payments on their loan (Doc. 1, Exh. 2, at ¶¶ 15-17). Thus, regardless of the reason, Plaintiffs were in default on their loan, and Wells Fargo had a right to foreclose.

Plaintiffs attempt to salvage their claim by asserting they "were not truly in default" because Wells Fargo "lulled and mislead them." *Id*. at ¶¶ 51-52. This argument is without merit. Plaintiffs cite no authority, nor can the Court find any, recognizing an exception to the "no default" rule for a party who has allegedly been "lulled" or "mislead" into default by a lender.[3] Regardless of the reason for Plaintiffs' payment cessation, Plaintiffs concede that they were in default at the time of the foreclosure and, accordingly, they cannot maintain a tort claim for wrongful foreclosure.

---

[2] Typically, a sale is void if the sale did not comply with the procedures outlined in the deed of trust. For example, if a homeowner is not given appropriate notice of a foreclosure sale, the sale may be void.

[3] Moreover, as noted in the Court's order on the motion to remand, the Court declines to create an exception to the default rule because such an exception would quickly swallow the rule. Any debtor could claim that the lender did or said something that "lulled" the debtor into default. This exception is also unnecessary because a debtor who has been mislead by a lender already has a remedy available, namely an action for fraud. *Peterson v. Kansas City Life Ins. Co.*, 98 S.W.2d 770, 773-74 (Mo. 1936).

The Court reaches the same conclusion regarding Plaintiffs' equitable claim for wrongful foreclosure. In its order on the motion to remand, the Court concluded that Plaintiffs failed to plead any facts from which the Court could infer the foreclosure sale was void or voidable. Accordingly, there is no plausible basis for Plaintiffs' equitable claim for wrongful foreclosure against Wells Fargo.

**II.    Plaintiffs have failed to state a claim for fraudulent misrepresentation against Wells Fargo.**

Count II asserts a fraudulent misrepresentation claim against Wells Fargo. The elements of a fraudulent misrepresentation claim are as follows:

> (1) A false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of the truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury.

*Crossland Constr. Co., Inc. v. Alpine Elec. Constr. Inc.*, 232 S.W.3d 590, 592-93 (Mo. Ct. App. 2007).

Plaintiffs' fraudulent misrepresentation claim is based upon the following representations: Wells Fargo's April 2009 advisement that it had a moratorium program; Wells Fargo's June 2010 representation that Plaintiffs were in the final stages of the loan modification process;[4] Wells Fargo's June 2010 statement that a negotiator would call Plaintiffs concerning a payment plan; Wells Fargo's June 2010 advisement that a payment plan would stop the foreclosure process; and Wells Fargo's statements on various dates that it would waive past defaults by Plaintiffs under the note and deed of trust, that Plaintiffs qualified for a loan

---

[4] The Court notes that, at the time of this statement, Plaintiffs should have recognized that they were not involved in the loan modification process because Wells Fargo denied Plaintiff's final loan modification on June 4, 2010, and the Petition does not indicate that Plaintiffs submitted another request for a loan modification after this date.

modification, that applying for a loan modification would stop the foreclosure process, that Plaintiffs were not in active foreclosure, and that it would not foreclose the deed of trust.

In order to sufficiently plead a claim for fraudulent misrepresentation, a pleader must comply with the requirements of Fed. R. Civ. P. 9(b) which states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The Court holds that Plaintiffs' overarching allegations that "[o]n or about the dates described [above] . . ." Wells Fargo represented "that it would waive Plaintiffs' past defaults under the note and deed of trust;" "that [Plaintiffs] qualified for a loan modification;" "that applying for a loan modification would stop the foreclosure process;" "that Plaintiffs were not in active foreclosure;" and "that Wells Fargo would not foreclose the deed of trust" are not specific enough to satisfy Rule 9(b)'s pleading requirements.

Plaintiffs' other allegations suffer from the same defect. Specifically, Plaintiffs allege that Wells Fargo advised them that (1) Wells Fargo had a moratorium program; (2) they were in the final stages of the loan modification process; (3) a negotiator would call them concerning a payment plan; and (4) the payment plan would stop the foreclosure process. However, Plaintiffs do not identify the individual(s) who made these representations to them. *See Pace v. Wells Fargo Bank, N.A.*, No. 4:11–CV–489 CAS, 2012 WL 3705088, at *13 (E.D. Mo. Aug. 27, 2012)[5] (concluding that the plaintiffs failed to meet the pleading requirements of Rule 9(b) on a

---

[5] The facts alleged in *Pace* are similar to those in this case. In *Pace*, the plaintiffs alleged that the defendants made the following fraudulent misrepresentations: "(1) that if plaintiffs successfully made the trial payments for a three-month period, they would be entered into a permanent loan modification program with the same monthly payments; (2) that their trial payments were being applied to their loan balance and account; (3) that plaintiffs qualified for both the HAMP and in-house modification programs; and (4) that plaintiffs should stop making their full payments on the Note in order to receive a modification." The complaint in *Pace* alleged that the plaintiff homeowners were told different and inconsistent things concerning whether they qualified for a loan modification

8

fraudulent misrepresentation claim because the plaintiffs "never c[a]me forward with the 'who, what, when, where and how' of their fraud claims . . . [i.e.] the time, place and contents of the alleged false representations, the identities of the individuals who made the representations, and what was obtained thereby"). Additionally, Plaintiffs make no allegations concerning the fraudulent intent of the individuals who made these representations.

Furthermore, Plaintiffs' Petition alleges that on multiple occasions Wells Fargo indicated that they were "in foreclosure" (Doc. 1, Exh. 2, at ¶¶ 22, 23, 26, 32). Therefore, although Wells Fargo may have indicated that Plaintiffs were going through the loan modification process, Wells Fargo also indicated that Plaintiffs were in foreclosure. "In light of these conflicting representations, Plaintiffs are not able to demonstrate that they reasonably relied on any representation[,] which is one of the elements that they must prove." *Freitas v. Wells Fargo Home Mortg., Inc.*, No. 11–3146–CV–SW–RED, 2011 WL 5524913, at *3 (W.D. Mo. Nov. 11, 2011) ("It is not a matter of picking and choosing what you want to hear and Plaintiffs were certainly not justified in stopping their payments completely as that was never a possible option under any circumstance.").

Accordingly, the Court holds that Plaintiffs cannot successfully assert a fraudulent misrepresentation claim against Wells Fargo.

### III.  Plaintiffs have failed to state a Missouri Merchandising Practices Act claim against Wells Fargo.

Count III alleges that Wells Fargo violated the MMPA. In relevant part, the MMPA

---

and whether their house was in foreclosure. Furthermore, the plaintiff homeowners in *Pace* alleged that the defendant mortgagee advised them that "(1) plaintiffs could not make their full loan payments during consideration for a loan modification, (2) if plaintiffs brought their loan current, they would no longer be considered for or would be ineligible for a loan modification, and (3) [p]laintiffs only failed to bring their loan current and/or reinstate the loan prior to the foreclosure sale because [d]efendant's employees and/or agents instructed them that doing so would disqualify them for a loan modification." *Pace*, 2012 WL 3705088, at *4.

9

prohibits

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact *in connection with the sale or advertisement* of any merchandise in trade or commerce . . . whether committed *before, during or after* the sale advertisement or solicitation.

Mo. Rev. Stat. § 407.020.1 (emphasis added). Plaintiffs allege that Wells Fargo violated the MMPA by "us[ing] and employ[ing] unfair, deceptive, and misleading practices in connection with the servicing of Plaintiffs' mortgage."

To establish a prima facie MMPA claim, a plaintiff must allege that he (1) purchased or leased merchandise; (2) primarily for personal, family or household purposes; and (3) thereby suffered an ascertainable loss of money or property, real or personal; (4) as a result of the defendant's use of one of the methods or practices declared unlawful by Section 407.020. Mo. Rev. Stat. § 407.025.1; *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008).

As the Court held in its order on the motion to remand, Plaintiffs cannot satisfy the first element in connection with the 2010 foreclosure because there was no advertisement and they did not purchase or lease anything beyond the initial 2006 purchase of their home. Accordingly, Plaintiffs' claim does not fall within the purview of the statute, and Plaintiffs cannot maintain an MMPA claim against Wells Fargo.

**IV. Plaintiffs have failed to state a claim for negligence against Wells Fargo.**

In Count V, Plaintiffs bring a state law negligence claim against Wells Fargo. The elements of a negligence claim are: "(1) the existence of a duty to conform to a certain standard of conduct to protect others against unreasonable risks; (2) breach of the duty; (3) proximate cause; and (4) actual damages." *Ivey v. Nicholson-McBride*, 336 S.W.3d 155, 157 (Mo. Ct. App. 2011).

Plaintiffs' Petition alleges that Wells Fargo, acting as the lender and service or Plaintiffs' loan, owed Plaintiffs a duty of good faith, which included the observance of reasonable commercial standards of fair dealing. The Petition additionally alleges that Wells Fargo was required to use reasonable care in exercising its responsibilities by properly applying payments, calculating appropriate and legitimate interest and fees, and providing accurate customer service. Plaintiffs' Petition specifically asserts that Wells Fargo breached its duty by "continually mishandling Plaintiffs' paperwork, providing false and misleading information regarding Plaintiffs' qualifications for loan modification, and providing false and misleading information regarding Plaintiffs' ability to stop the foreclosure process" (Doc. 1, Exh. 2, at ¶ 96).

The Court first notes that, under Missouri law, "[i]f the [relevant] duty arises solely from the contract, the action is contractual. The action may be in tort, however, if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement." *Business Men's Assur. Co. of Am. v. Graham*, 891 S.W.2d 438, 453 (Mo. Ct. App. 1994). Moreover, under Missouri law, "the relationship between a lender and a borrower is one of contractual obligation, not of duty." *Pace*, 2012 WL 3705088, at *15 (citing *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 458 (Mo. Ct. App. 1991) (stating that "the relationship between a bank and its depositor involves a contractual relationship between a debtor and a creditor")).

Here, Plaintiffs allege that Wells Fargo financed the purchase of their home. Accordingly, Wells Fargo was Plaintiffs' lender, and any duty that Wells Fargo owed to Plaintiffs is contractual. *See White v. BAC Home Loans Servicing, L.P.*, No. 4:10–CV–2137 CAS, 2011 WL 1483919, at *12 (E.D. Mo. April 19, 2011) (concluding that plaintiffs could not assert a negligence claim because the parties' relationship was one of lender and borrower).

Therefore, Plaintiffs cannot maintain a negligence action against Wells Fargo based on this duty.

> **V.    Plaintiffs have failed to state a claim for negligent misrepresentation against Wells Fargo.**

Count VI asserts a claim for negligent misrepresentation against Wells Fargo. The elements of a negligent misrepresentation claim are: (1) the speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss. *Harris v. Smith*, 250 S.W.3d 804, 808 (Mo. Ct. App. 2008).

Plaintiffs base their negligent misrepresentation claim on their allegations that Wells Fargo represented to Plaintiffs that they qualified for various loan modifications, that applying for and obtaining such modifications would stop the foreclosure process, that Plaintiffs were not in active foreclosure, and that Wells Fargo's representatives would contact Plaintiffs to offer assistance. Plaintiffs allege, in relevant part, that they have suffered monetary damage due to the loss of their home and the repairs and improvements they performed on the property.

Plaintiffs' claim for negligent misrepresentation is barred by Mo. Rev. Stat. § 432.045.2, which states, in relevant part, that "[a] debtor may not maintain an action upon or a defense to a credit agreement unless the credit agreement is in writing, provides for the payment of interest or for other consideration, and sets forth the relevant terms and conditions . . . ." The language of this statute "is very broad and 'demonstrates the legislature's intent to eliminate *all* claims and

defenses relating to a credit agreement if that credit agreement is not in writing.'" *Smithville 169 v. Citizens Bank & Trust Co.*, No. 4:11–CV–0872–DGK, 2013 WL 434028, at *3 (W.D. Mo. Feb. 5, 2013) (quoting *BancorpSouth Bank v. Paramont Properties, L.L.C.*, 349 S.W.3d 363, 367-68 (Mo. Ct. App. 2011) (holding claims of promissory estoppel and equitable estoppel based on oral promises barred by § 432.047)).

The relevant Deed of Trust, which is attached as an exhibit to the Petition, states that:

> Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

Nowhere in Plaintiffs' Petition do they allege that they set forth any other agreement with Wells Fargo in writing. However, all of Plaintiffs' allegations rely on oral agreements or commitments they assert Wells Fargo made to them concerning their loan and its modification. Accordingly, this is "an action upon or defense to a credit agreement," and Plaintiff's claim for negligent misrepresentation is barred pursuant to § 432.045.2.[6]

**VI.    The Court dismisses Plaintiffs' civil conspiracy claim against Wells Fargo.**

Plaintiff has moved to dismiss its civil conspiracy claim against Wells Fargo. Pursuant to Fed. R. Civ. P. 41(a)(1)(A), a "plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared."

---

[6] The Court notes that Plaintiffs' reliance upon *Mika v. Cent. Bank of Kansas City*, 112 S.W.3d 82 (Mo. Ct. App. 2003) is misplaced. The *Mika* decision was based on the predecessor to § 432.045.2, and many courts have held that *Mika*'s holding regarding fraud and mistake-based claims is longer good law. *See Smithville v. Citizens Bank & Trust Co.*, No. 4:11–CV–0872–DGK, 2013 WL 434028, at *5 n.3 (W.D. Mo. Feb. 5, 2013); *BancorpSouth Bank v. RWM Properties II, LLC*, No. 4:11CV00373 JCH, 2011 WL 4435271, at *3 (E.D. Mo. Sept. 23, 2011); *U.S. Bank Nat'l Assn v. Canny*, No. 4:10CV421 CDP, 2011 WL 226965, at *2 n.5 (E.D. Mo. Jan. 24, 2011).

Neither defendant has filed an answer or motion for summary judgment. Accordingly, pursuant to Fed. R. Civ. P. 41, the Court dismisses Plaintiffs' civil conspiracy claim against Wells Fargo without prejudice.

**Conclusion**

For the above stated reasons, the Court GRANTS Defendant Wells Fargo's motion to dismiss (Doc. 16). Plaintiffs' claims of wrongful foreclosure, fraudulent misrepresentation, violation of the MMPA, negligence, and negligent misrepresentation are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs' civil conspiracy claim against Wells Fargo is dismissed without prejudice pursuant to Fed. R. Civ. P. 41.

**IT IS SO ORDERED.**

DATE: July 12, 2013           /s/ Greg Kays
                              GREG KAYS, JUDGE
                              UNITED STATES DISTRICT COURT