# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| KENNETH D. WIVELL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 6:12-CV-3457-DGK |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY

This case concerns a home foreclosure. Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), loaned Plaintiffs Kenneth D. Wivell and Tina M. Wivell ("the Wivells") money in exchange for a mortgage on their house. Wells Fargo declared the Wivells in default on their loan and foreclosed on the house. The Wivells sued Wells Fargo, contesting the process that led to the loss of their home.

Pending before the Court is Wells Fargo's Motion to Exclude Testimony of Michael Ferry (Doc. 112), a prospective expert witness with disputed expertise in mortgage servicing. For the reasons below, the motion is GRANTED.

**Background**

According to the allegations in the Wivells' Amended Complaint (Doc. 92), the Wivells purchased property with a loan from Wells Fargo, which was secured by a mortgage on the property and memorialized in a written deed of trust. While current on their payments, the Wivells asked Wells Fargo to conduct a loan modification. Wells Fargo discussed the possibility of a loan moratorium, but allegedly told the Wivells they had to first default on their loan payments for 90 days.

Once the Wivells stopped making payments, Wells Fargo told them it did not have a moratorium program and that the Wivells would instead have to apply for a loan modification. The Wivells attempted multiple times to apply, but Wells Fargo repeatedly denied their applications or told them it was not receiving the paperwork. It also told them it would not accept any mortgage payments, but rather the Wivells would have to pay off the entire balance of the loan.

Wells Fargo then told the Wivells it was placing their house into foreclosure. Despite myriad attempts by the Wivells to negotiate with Wells Fargo, it sold their home in foreclosure.

The Wivells then filed this lawsuit, contending Wells Fargo violated the Missouri Merchandising Practices Act in two ways. Count I claims Wells Fargo committed an unfair or deceptive trade practice by foreclosing on their home after improperly handling the loan modification application process. Count II claims Wells Fargo committed an unfair or deceptive trade practice by improperly handling the loan modification application process. The Amended Complaint also seeks punitive damages.

The Wivells have retained an expert, Michael A. Ferry ("Ferry"), to testify in their case. Ferry testified at his deposition that he is an attorney licensed in Missouri and Illinois. From 1979 until about 1998, he worked for Legal Services of Eastern Missouri representing consumers against banks, finance companies, lenders, credit card issuers, debt collectors, retailers, and insurance companies. In that capacity, he handled cases involving foreclosures, although foreclosures were not the focus of his practice. Since 1998, he has worked full-time for Gateway Legal Services, a not-for-profit legal aid program in St. Louis, where he represents low-income clients on matters related to Social Security benefits claims. Although his practice no longer

2

involves consumer cases, Ferry claims awareness of the transition the industry has undergone over the last two decades.

Outside of his employment, Ferry has served on the board of directors for the National Consumer Law Center ("NCLC") for twenty years, and has been president of that board for ten years. NCLC publishes materials, trains attorneys, lobbies federal regulators and legislators, and conducts high-impact litigation in the area of mortgage loan servicing. In this capacity, Ferry has reviewed reports on NCLC's efforts in the area of mortgage reform, made comments as appropriate, and supervised the people doing the "heavy lifting in that area."

Ferry also serves as a commissioner from Missouri to the National Conference of Commissioners on Uniform State Laws, better known as the Uniform Law Commission, where he is a member of a committee to draft a Uniform Home Foreclosure Procedures Act. The Act creates procedures for accomplishing foreclosures, including requiring the parties to mediate before foreclosure and streamlining the process in cases where the consumer and the lender are unable to resolve their disputes. Finally, Ferry is a fellow at the American College of Consumer Financial Service Lawyers, an organization comprising accomplished attorneys in the field of consumer financial services.[1]

Ferry also lacks some experience. Chiefly, he has never worked directly in the field of mortgage loan servicing, nor does he have other related experience, such as publishing materials on the topic.

In reaching the conclusions about which he intends to testify, Ferry assumed as true all allegations in the Amended Complaint. He considered the Wivells' depositions and about 1600 pages of documents produced by Wells Fargo. He claims to have relied on "numerous books

---

[1] Additional qualifications might be found in Ferry's curriculum vitae, which is referenced in his expert report and in his deposition. However, the Court could not find any such document in the record.

3

and articles [he has] read over the years regarding the mortgage services industry," and lists five.[2]

Ferry rendered a summary of his expected testimony (Doc. 114-1) and one supplemental statement (Doc. 114-3). In them, he expresses seven opinions:

> [1] Wells Fargo failed to develop appropriate policies and to hire and train adequate personnel to responsibly consider and respond to [the Wivells'] request for a loan modification.
>
> [2] Wells Fargo provided false hope, froze the Wivell family into inaction (other than the Wivells' efforts to pursue the loan modification offered by [Wells Fargo]), and put the Wivell family into a much worse position that it had been at the time their initial request for a loan modification.
>
> [3] Wells Fargo damaged the Wivell family by failing to implement responsible policies, failing to monitor the activities of its employees or agents or their compliance with such policies, and by failing to disclose to the Wivell family at the outset that Wells Fargo's loan modification team would act in the manner that it did.
>
> [4] Wells Fargo acted with knowledge and a total disregard for how its behavior would harm the Wivell family.
>
> [5] Wells Fargo knew or should have known that its loan modification procedures and policies, as demonstrated in its interaction with the Wivell family, harmed homeowners by mishandling documents, misleading consumers, denying various requests without reason, causing wrongful foreclosures, and in some cases, increasing debt to homeowners while providing no benefit in return.
>
> [6] It was reasonable for the Wivell family to follow the instructions of [Wells Fargo] while the Wivell family believed that WF was processing a loan modification.
>
> [7] It does not appear that Wells Fargo had any meaningful process to consider a modification request.

(Doc. 114-1 at 1–2).

---

[2] These sources are: *Independent Foreclosure Review Payment Agreement Details*, Office of the Comptroller of the Currency & Fed. Reserve Bd., http://www.occ.gov/news-issuances/news-releases/2013/nr-ia-2013-60a.pdf (last visited Oct. 26, 2015); John Rao et al., Nat'l Consumer Law Ctr., *Foreclosures and Mortgage Servicing* (5th ed. 2014); Adam J. Levitin & Tara Twomey, *Mortgage Servicing*, 28 Yale J. on Reg. 1 (2011); Peter S. Goodman, *Lucrative Fees May Deter Efforts to Alter Loans*, N.Y. Times, July 29, 2009, at A1; Diane E. Thompson, Nat'l Consumer Law Ctr., *Why Servicers Foreclose When They Should Modify and Other Puzzles of Servicer Behavior: Servicer Compensation and Its Consequences* (2009), https://www.nclc.org/images/pdf/pr-reports/report-servicers-modify.pdf.

## Standard

Wells Fargo moves to exclude Ferry's testimony. A putative expert witness may testify if he satisfies four general requirements. First, he must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, his expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Third, the expert's testimony must reflect reliable and scientifically valid reasoning and methodology. Fed. R. Evid. 702(c); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–94 (1993). Fourth, the expert must have "reliably applied the principles and methods" to "sufficient facts or data." Fed. R. Evid. 702(b), (d).

The party seeking admission of expert testimony has the burden of establishing admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). A court should exclude expert testimony "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 562 (8th Cir. 2014).

## Discussion

Wells Fargo challenges Ferry's qualification as an expert, arguing that he lacks sufficient "knowledge, skill, experience, training, or education" to opine on the topic of mortgage loan servicing. Fed. R. Evid. 702. The issue here is not the witness's qualifications in the abstract, but whether "the area of the witness's competence matches the subject matter of the witness's testimony." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006).

Thus, the Court's first task is to frame what, exactly, Ferry wants to testify about. Wells Fargo argues that Ferry is trying to testify about mortgage loan servicing, with which he has no

5
Case 6:12-cv-03457-DGK   Document 129   Filed 10/26/15   Page 5 of 9

experience. The Wivells respond that the subject matter of his testimony is the mortgage industry or foreclosures in general.

As reflected in his expert report, Ferry opines that Wells Fargo did not have in place appropriate policies regarding loan modifications, and that the Wivells were reasonable to rely on Wells Fargo having such policies. The Wivells themselves frame the issue in terms of loan servicing by remarking: "The manner in which mortgages are handled by huge commercial lenders and servicers disorients ordinary consumers and jurors, and even many attorneys." (Doc. 114 at 2). And this focus on loan servicing is the *only* focus of Ferry's report. His report does not reference foreclosures or directly address them. Although loan modification may, in some cases, *affect* the foreclosure process by impacting how and when a mortgagee may foreclose, loan servicing and foreclosures are distinct fields. Thus, Ferry's prospective testimony concerns only how firms do, and should, service mortgage loans.

The Court next must determine whether Ferry is qualified to testify about best practices in loan servicing. A witness need not specialize in his area of testimony, so long as his testimony is an application of a generalized expertise. *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991) ("[A]n expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."); *see, e.g.*, *Robinson*, 447 F.3d at 1101 ("Most courts have held that a physician with general knowledge may testify regarding medical issues that a specialist might treat in a clinical setting."). However, the subject of testimony must be subsumed within the witness's expertise; it is insufficient for the subject of testimony to be merely related, on the facts of the case, to the witness's expertise. *See Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1275 (8th Cir. 1990) (holding, in a case arising out of a lawn mower accident,

that an expert in mechanical engineering was qualified "to testify about the workings of the lawn mower and to some degree about the interaction between the human body and the mower," but because he "possesse[d] no demonstrated expertise in human anatomy," could not testify about human anatomy).

Here, Ferry lacks any expert knowledge, skill, experience, training, or education in mortgage loan servicing. His qualifications are inadequate. He has practiced, nearly exclusively, Social Security benefits law for about the last seventeen years. Although he practiced consumer rights law for several years in the 1980s and '90s, there is no indication that his practice comprised mortgage loan servicing issues. He is involved with NCLC, the Uniform Law Commission, and the American Bar Association, but he has not practiced or studied loan servicing with these organizations; merely associating with bona fide experts in those organizations is insufficient. Finally, although he has read four articles and a book on loan servicing, and although he has attended servicing conferences put on by NCLC, the Wivells fail to demonstrate how these sources have given Ferry an expertise beyond what the average juror already knows.

Further, Ferry's profile has some glaring omissions. For example, he has not taken any classes or received any training in servicing practices. He has not published any materials or drafted any policies for mortgage loan servicers. He has not consulted with any other individuals involved in the servicing industry, or examined any materials produced by servicers other than Wells Fargo in this case. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (finding a witness was not qualified as an expert in safe warehousing practices despite having previously associated with warehouses, because he did not study, write about, or work in the field of warehousing).

7

Although Ferry may have some expertise in *foreclosures*, loan servicing is not a specialty or subset of foreclosure expertise. Because his prospective testimony would not be an application of his related but separate expertise, his foreclosure expertise does not qualify him to testify about servicing. *See Stull*, 906 F.2d at 1275.

Finally, the Wivells suggest that if the Court accepts Wells Fargo's arguments, "only an insider currently employed by a financial services entity (an entity such as [Wells Fargo]) would qualify as an expert" (Doc. 114 at 1). "In determining whether an expert is sufficiently knowledgeable to be admitted to testify," the court should consider whether there are experts "who are more specially qualified" yet do not work for "the company or industry whose practices are being challenged." *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997) ("If the only experts permitted to testify inevitably represent the same side of a civil case, those who possess these experts can, for all practical purposes, set their own standards.").

The Court is unpersuaded that the Wivells cannot retain an expert in mortgage loan servicing who is not captured by big banks like Wells Fargo. Loan servicing is not a niche area akin to a company's proprietary product design. *Cf. id.* at 82 (holding an expert admissible even though he lacked experience in airport terminal design or baggage claim systems, because "[i]t is hard to imagine an expert in [those areas] who developed that expertise in any way other than by working for the airline industry"). The Court agrees with Wells Fargo that the Wivells could reasonably have located "a professional with experience dealing with lenders, servicers, investors, and/or pertinent regulatory and legal issues,"—or, on the other side, borrowers—"or an academic who has focused his or her career on these topics" (Doc. 122 at 2). Therefore, Ferry fails to qualify as an expert on relative, not just absolute, grounds.

Ferry's opinions are "so fundamentally unsupported" that they will not be helpful to the jury. *See Johnson*, 754 F.3d at 562. Therefore, the Wivells have failed to establish the admissibility of his testimony. *See Lauzon*, 270 F.3d at 686. Accordingly, the Court need not consider Wells Fargo's alternative argument that, assuming Ferry qualifies as an expert, he has not consulted enough facts to render a reliable opinion.

## Conclusion

For the reasons discussed above, Wells Fargo's motion to exclude Ferry as an expert witness (Doc. 112) is GRANTED.

**IT IS SO ORDERED.**

Date:  October 26, 2015  /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT