**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | | |
|---|---|---|
| KENNETH D. WIVELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 6:12-CV-3457-DGK |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING SUMMARY JUDGMENT**

This case concerns a family's failed attempt to forestall the foreclosure of their home. Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), loaned Plaintiffs Kenneth D. Wivell and Tina M. Wivell ("the Wivells") money in exchange for a mortgage on their house. When the Wivells became concerned about their ability to timely repay the loan, they embarked on a year-and-a-half odyssey to stave off foreclosure, which involved loan moratoria, modifications, and forbearances. Ultimately, Wells Fargo declared the Wivells in default and foreclosed on the house. The Wivells sued Wells Fargo under the Missouri Merchandising Practices Act ("MMPA"), contesting the process that led to the loss of their home.

Pending before the Court is Wells Fargo's Motion for Summary Judgment (Doc. 110). Because the evidence viewed most favorably toward the Wivells does not establish that Wells Fargo is liable under the MMPA, the motion is GRANTED.[1]

[1] The Wivells request a hearing to present oral argument on their motion (Doc. 120 at 15). Because the record adequately presents the relevant facts and legal contentions, the Court denies their request. *See* Fed. R. Civ. P. 78(b).

## Background[2]

To buy a home in St. Robert, Missouri, in February 2006 the Wivells obtained a loan from Wells Fargo that was secured by a deed of trust on the property. Both Wivells signed the deed of trust, which contains a no-oral-modifications clause that provides:

> 27. Notice. Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreement we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

(Doc. 111-3 at 14). The deed of trust also gives Wells Fargo the option to return any payment—full or partial—that is insufficient to bring the loan current. (*Id.* at 4).

The Wivells made payments on the loan for about three years without incident. Around December 2008, Kenneth Wivell lost his job. Worried that he might become unable to make his mortgage loan payments, he proactively called Wells Fargo to ask about his options. A Wells Fargo representative offered him a loan moratorium, which would extend the deadline for the Wivells to repay their debt. The representative told Kenneth Wivell that Wells Fargo could not offer the loan moratorium until the Wivells stopped making payments and went past due on the loan. The Wivells continued making payments to avoid resorting to a moratorium, but despite Kenneth Wivell finding a new job, ceased making payments in April 2009.

[2] The parties vigorously contest which facts are relevant and what inferences from those facts are reasonable. This section omits facts properly controverted by the Wivells, facts that are immaterial to the resolution of the pending motion, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Although a jury could make completely opposite inferences from these facts, the Court must here state the facts in the light most favorable to the Wivells as the non-moving parties. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Around the time the Wivells stopped making payments, Wells Fargo told them that it actually does not offer loan moratoria. Instead, Wells Fargo offered a loan modification program, which would alter the terms of the deed of trust to facilitate their loan repayment.

The Wivells applied for a loan modification, which Wells Fargo denied in June 2009, claiming too much time had passed. The Wivells applied again in November, but in December this application was apparently also denied. Around this time, Wells Fargo told them that their house was going to be sold at a foreclosure sale because they had defaulted on the loan.

Meanwhile, in August 2009, Wells Fargo offered the Wivells a temporary forbearance agreement under which they would "catch up" on their loan by making nineteen payments of about $1,500 per month. The Wivells did not sign the forbearance agreement or make any of the payments it contemplated.

While the parties were engaging in these negotiations, in August 2009 a fire damaged the Wivells' home. The casualty insurer indemnified Wells Fargo directly. Although the Wivells asked Wells Fargo to apply all insurance proceeds to their loan, in accordance with the deed of trust,[3] Wells Fargo paid the contractors first and gave the Wivells the remainder. The funds the Wivells received were insufficient to bring the mortgage loan current.

In January 2010, Wells Fargo offered the Wivells a slightly different temporary forbearance plan under which they would make three monthly payments of about $1,250. Wells Fargo claims that the agreement obligated the Wivells to then make a fourth, balloon payment sufficient to reinstate the loan. The Wivells understood that after making three payments, they would automatically receive a loan modification. On this understanding, they made the first

[3] Section 5 of the deed of trust states, "Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened." (Doc. 111-3 at 6).

three payments, but could not make the balloon payment when Wells Fargo requested it in April 2010. In any event, Wells Fargo then offered the Wivells a third chance at a loan modification. Wells Fargo denied this loan modification application that month on the grounds that the Wivells failed to provide all of the information it needed to process their application.

On June 4, 2010, Wells Fargo called the Wivells and told them that the foreclosure sale was set for June 30. On June 16, the Wivells submitted a fourth application for a loan modification. They called on June 23 to inquire about the status of their application, and were told that Wells Fargo was reviewing their application and that a negotiator, who could halt the foreclosure sale, would call them. The negotiator never contacted the Wivells.

On June 30, Tina Wivell—believing that the latest loan modification application was going to halt the foreclosure sale—called Wells Fargo to ask about the negotiator. She was told the house had already been sold that day.

Throughout this process, the Wivells always provided Wells Fargo with every piece of information it requested. All loan moratorium and modification offers made by Wells Fargo were oral.

The Wivells filed this lawsuit in 2012. After remand from the Court of Appeals, *Wivell v. Wells Fargo*, 773 F.3d 887 (8th Cir. 2014), they filed a two-count, amended complaint contending Wells Fargo violated the MMPA. The Wivells seek punitive damages.

**Standard**

A moving party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Only those facts supported by the record are before the court on a summary judgment motion. Fed. R. Civ. P. 56(c)(1). Unless specifically controverted by the nonmoving parties, all facts set forth in the statement of the movant are deemed admitted for the purpose of summary judgment. L.R. 56.1(a). To specifically controvert a factual position, the nonmoving parties must "refer specifically to those portions of the record upon which [they] rel[y]." *Id.* Once the parties have satisfied their burdens, the court views the resulting facts in the light most favorable to the nonmoving parties and draws all reasonable inferences in their favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

**Discussion**

Wells Fargo moves for summary judgment on both claims against it, each arising under the MMPA. Count I claims Wells Fargo committed unfair or deceptive trade practices through servicing the original mortgage loan. Count II claims Wells Fargo committed unfair or deceptive trade practices through a separate transaction, the sale of a loan modification. The complaint seeks punitive damages for these alleged violations.

The MMPA is a state consumer protection statute that creates a private right of action for unfair or deceptive trade practices. To prevail under the MMPA, plaintiffs must ultimately prove five elements:

(1) The defendant sold them services for primarily personal use;

(2) They suffered an ascertainable loss of property;

(3) The defendant committed an unfair or deceptive trade practice;

(4) In connection with the sale;

(5) Which caused the plaintiffs' loss.

*Ward v. W. Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. 2013); Mo. Rev. Stat. §§ 407.010(4), 020, 025.

The first two elements are uncontested here. The Wivells purchased from Wells Fargo a service, a home loan, for their personal use. They suffered an ascertainable loss of property when Wells Fargo foreclosed on their home. The only issues disputed here are whether Wells Fargo's actions: were unfair or deceptive; were connected to the sale; and caused the Wivells to lose their home.

## I. There is no genuine dispute of facts material to the Wivells' claim that Wells Fargo violated the MMPA on their sale of a mortgage loan.

Count I arises from a particular sale: Wells Fargo's sale of a mortgage loan to the Wivells. The Wivells allege that Wells Fargo committed a number of unlawful trade practices in connection with this sale, specifically, through servicing the loan. The Court examines whether a reasonable jury could find that these actions constitute an MMPA violation.

### A. As the deed of trust reflects, Wells Fargo's mishandling of the Wivells' loan moratorium and modification applications was not "in connection with" the original sale.

The Wivells first argue that Wells Fargo misrepresented the availability of a loan moratorium, failed to properly process the Wivells' loan modification applications, improperly disbursed the casualty insurance proceeds to the contractors before disbursing them to the Wivells, refused to accept partial payments, and failed to follow the guidelines of the U.S. Department of Veterans Affairs ("VA").

These actions do not create liability because they are not "in connection with" Wells Fargo's sale of the loan. As the Court of Appeals held earlier in this litigation, "[a]ny loan-modification negotiations were not 'in connection with' the sale of the loan because a loan

modification 'was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan.'" *Wivell*, 773 F.3d at 899. "Accordingly, any statement by Wells Fargo with respect to the availability of a loan modification is not actionable under the MMPA." *Id.*

The same logic applies to the Wivells' claim that Wells Fargo acted unlawfully in offering a non-existent loan moratorium and in improperly allocating the insurance proceeds. Wells Fargo never agreed in the deed of trust to offer a loan moratorium or to disburse the insurance proceeds to the Wivells first. Similarly, the deed of trust made it *optional* for Wells Fargo to accept partial payments, so it did not violate the deed of trust by refusing such payments. Finally, the Wivells do not explain how or why the deed of trust obligated Wells Fargo to follow VA guidelines.[4]

Because the terms of the loan sale never placed these duties on Wells Fargo, its failure to perform them is not "in connection with" the sale. *See id.* The Wivells cannot satisfy the fourth element of an MMPA claim on these parts of Count I, so Wells Fargo is accordingly entitled to judgment as a matter of law. *See* Mo. Rev. Stat. § 407.025.

**B. Because the deed of trust does not state that a loan modification application would suspend the foreclosure sale, Wells Fargo's misrepresentation to the contrary is not an unfair or deceptive trade practice.**

Next, Count I alleges that Wells Fargo foreclosed on the deed of trust despite promising that applying for a loan modification would suspend a foreclosure sale. Such a practice *is* "in connection with" the sale, because although the deed of trust does not mandate loan modifications, it does discuss the right to collect on the loan generally. *Wivell*, 773 F.3d at 899; *see Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 415 (Mo. 2014). The issue here is whether

[4] The Wivells suggest that Michael Ferry, their prospective expert witness, can testify that Wells Fargo "was obligated to follow the VA policies." Pls.' Br. 7 (Doc. 120). Because the Court has prohibited this witness from testifying (Doc. 129), this testimony cannot link the VA guidelines to the deed of trust.

such a foreclosure, although "in connection with" the sale, was unfair or deceptive as required by the MMPA's third element.

An "unfair or deceptive trade practice" is defined broadly to encompass "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1; *see Ward*, 403 S.W.3d at 84 ("The MMPA is drafted broadly and there is no specific definition of deceptive practices contained in the statute."); *see also* Mo. Code Regs. tit. 15, §§ 60-8.020, 60-9.020.1 (further defining "unfair practice" and "deception").

Nonetheless, Missouri case law establishes that some conduct is not, as a matter of law, "unfair" or "deceptive." The parties discuss extensively two cases in this vein, which warrant treatment here. Wells Fargo relies on a decision from the Supreme Court of Missouri, *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220 (2013). The Wivells rely on a decision from the Missouri Court of Appeals, *Kerr v. Vatterott Educational Centers, Inc.*, 439 S.W.3d 802 (2014).

"When determining the scope of Missouri law, [federal courts] are bound by the decisions of the Supreme Court of Missouri." *Wivell*, 773 F.3d at 897. "Where the Missouri Supreme Court has not spoken," federal courts must predict how that court would rule. *Id.* "Decisions of Missouri's intermediate appellate courts are not binding on [federal courts], but they are persuasive authority, and [federal courts] must follow them when they are the best evidence of Missouri law." *B.B. v. Cont'l Ins. Co.*, 8 F.3d 1288, 1291 (8th Cir. 1993).

In *Chochorowski*, the plaintiff rented a tiller from the defendant by signing a contract agreeing to pay an optional damage fee waiver. 404 S.W.3d at 223–24. The plaintiff brought

two MMPA claims. First, she charged that the damage fee waiver was an unlawful "negative option," meaning she was charged for merchandise she did not order. *Id.* at 226. The Supreme Court of Missouri rejected this claim because the plaintiff had agreed to the damage fee waiver several times over in the contract. *Id.* at 227. Second, the plaintiff argued that the defendant violated the MMPA by incorrectly telling her that the fee was mandatory. *Id.* at 229. Although this claim—unlike the first one—rested upon an affirmative, oral misrepresentation, it too was rejected. *Id.* at 229–30. The Supreme Court held that the contract clearly explained that the fee was optional; to the extent the defendant's employee attempted to alter that arrangement, such was not actionable in light of another contractual provision which stated that the defendant made no promises beyond those in the written contract. *Id.* at 230.

The next year, the Missouri Court of Appeals considered *Kerr*, where the plaintiff signed up in writing for defendant's classes. 439 S.W.3d at 811. Although the defendant's admissions coordinator assured the plaintiff that she was enrolling in a particular program, the plaintiff had actually enrolled in another. *Id.* When the plaintiff sued under the MMPA, the defendant moved for summary judgment on the ground that the written enrollment documents clearly indicated which program the plaintiff was actually agreeing to join. *Id.*

The Missouri Court of Appeals rejected this contention, holding that the merger rule—the rule "that all prior and contemporaneous oral agreements and representations are merged into the written contract entered into by the parties"—did not apply to MMPA claims, so unlawful prior and contemporaneous oral representations *could* give rise to MMPA liability. *Id.* The court distinguished *Chochorowski*, but focused on only its first MMPA claim, the negative option claim. *See id.* at 812 (citing only the portion of *Chochorowski* dealing with the negative option, and noting that "[o]ral misrepresentations were not involved in that claim, only whether the

contract charged for merchandise that the plaintiff had not ordered or solicited"—which was not true of the second *Chochorowski* claim). Interpreting *Chochorowski* in this way, the *Kerr* Court held that oral representations that contradict a contemporaneously executed contract are actionable under the MMPA. *Id.*

Here, the Wivells' deed of trust explained that loan modifications were optional, and laid out the procedures for foreclosure. It does not indicate that a foreclosure may be postponed if a modification is not concluded. It explained that the deed of trust could be altered only in writing. Wells Fargo did not commit an unfair or deceptive trade practice by sticking to those procedures and not postponing the foreclosure, because it never offered a loan modification. Although Wells Fargo employees made oral promises to the contrary, those were ineffective due to the no-oral-misrepresentations clause. *See Chochorowski*, 404 S.W.3d at 230. In light of the deed of trust, Wells Fargo did not commit an unfair trade practice by foreclosing on the Wivells' home, even though it promised to postpone foreclosure proceedings during loan modification negotiations.

*Kerr* does not compel a different result for two reasons. First, *Kerr* is not the best evidence of how the Supreme Court of Missouri would confront the issue, because *Kerr* did not address the second *Chochorowski* MMPA claim, which involved an oral misrepresentation. *Kerr*, 439 S.W.3d at 812; *see B.B.*, 8 F.3d at 1291.

Second, *Kerr* focused on how the MMPA rejected the merger rule, thereby admitting to its purview prior and contemporaneous misrepresentations. Applying that principle, the court held the oral misrepresentation at issue to be actionable because it was made contemporaneously with the contract's execution. Here, Wells Fargo made its oral misrepresentations *after* the contract was executed. *Kerr* is thus inapposite. The Wivells cite no other authority for the

proposition that subsequent misrepresentations can create MMPA liability. Thus, the Wivells cannot sustain a claim based on Wells Fargo's subsequent oral misrepresentations that it would halt the foreclosure sale while processing their loan modification requests and putting them in touch with a negotiator.

Missouri case law, exemplified by *Chochorowski*, dictates that the oral communications here do not reach the level of unlawful trade practices. The Wivells cannot satisfy the third element of an MMPA claim on this part of Count I, so Wells Fargo is accordingly entitled to judgment as a matter of law. *See* Mo. Rev. Stat. § 407.025.[5]

**II. Because the Wivells never purchased a loan modification from Wells Fargo, they lack statutory standing to prosecute Count II.**

Count II focuses on a different transaction: the Wivells' alleged purchase of a loan modification from Wells Fargo. The Wivells believe Wells Fargo acted unlawfully by refusing to honor its modification promises, negotiating in bad faith, and failing to halt the foreclosure sale while processing the modification application despite its promises to the contrary.

The MMPA creates a private right of action for a person "who purchases or leases" certain merchandise and then suffers a loss because of misrepresentations "in connection with the sale . . . of any merchandise." Mo. Rev. Stat. §§ 407.020.1, 407.025.1. "Sale" is defined expansively to include an "offer for sale." *Id.* § 407.010(6). Thus, while an MMPA claim may arise from an offer for sale, a fraud-tainted offer is not enough; to have statutory standing, the harmed consumer must have proceeded to "purchase[] or lease[]" the merchandise offered. *See also Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. Ct. App. 1984) ("One who

[5] In light of this holding, the Court need not consider Wells Fargo's alternative arguments directed toward the fifth element of an MMPA claim, that the Wivells' default—not Wells Fargo's oral misrepresentations—caused their loss.

attempts to purchase, but who never receives the goods or services nor pays anything of value cannot be said to have suffered damage by reason of any unlawful practice.”).

A reasonable jury could not find for the Wivells because they did not “purchase[] or lease[]” a loan modification. Wells Fargo denied all four of the Wivells’ applications for a loan modification. Wells Fargo may have done so carelessly, arbitrarily, or in bad faith—as the Wivells allege—but the fact remains that the parties never agreed on a modification plan. *See Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 408 (Mo. 2014) (“The loan modification . . . was not a service the lender agreed to sell or the borrower agreed to buy . . . . In engaging in loan modification negotiations, Wells Fargo was . . . *contemplating* creating a new agreement.” (emphasis added)).

Because the Wivells never “purchase[d] or lease[d]” merchandise in the form of a loan modification, any misrepresentations arising from the fruitless negotiations are not actionable under the MMPA. *See* Mo. Rev. Stat. § 407.025.1.[6] There is no genuine dispute of material fact on this claim, so the Court grants summary judgment to Wells Fargo on Count II.

**Conclusion**

If the Wivells’ allegations are true, Wells Fargo’s conduct was not model loan servicer behavior. However, this conduct cannot, as a matter of law, subject Wells Fargo to liability under the MMPA. For the reasons discussed above, Wells Fargo’s motion for summary judgment (Doc. 110) is GRANTED. Judgment is entered in favor of Wells Fargo on all counts in the Amended Complaint.

Because this Order adjudicates all claims in the case, Wells Fargo’s eleven motions in limine (Docs. 131–41) are each DENIED as moot.

[6] The Wivells did arguably make a second purchase, the January 2010 temporary forbearance. However, the complaint deals only with the loan modification negotiations, which were distinct from the temporary forbearance negotiations.

**IT IS SO ORDERED.**

Date: November 17, 2015

/s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT